UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

GUY WILLIAMS, an individual, et al.,

    Plaintiffs,

v.

CHRISTIAN EDUARD LOCHER, an individual, et al.,

    Defendants.

3:10-CV-00264-LRH-VPC

ORDER

Before the court is Plaintiffs Guy Williams, et al.'s Motion for Order to Show Cause and for Appointment of Receiver (##18,19[1]). Defendants Christian Locher, Barbera McIntire, and Shooting Star, LLC, (collectively "Defendants") have filed an opposition (#28) to which Plaintiffs replied (#30).

Also before the court is Defendants' Motion for Discharge and/or to Vacate the Order and Writ of Attachment and Cross-Motion for Sanctions (#27). Plaintiffs have filed an opposition (##31, 32).

**I.   Facts and Procedural History**

This is an investment fraud dispute arising out of Defendant Locher's alleged representations to Plaintiffs about an investment opportunity. In 2004, Locher approached

---

[1] Refers to the court's docket entry number.

Plaintiffs and told them about an investment opportunity in a Canadian company called Teilhard Technologies, Inc. Locher stated that he controlled Shooting Star, an investment entity that planned to purchase Teilhard Technologies. Locher further informed Plaintiffs that he was an experienced investor and that he was willing to act as a broker for Plaintiffs in certain transactions whereby Plaintiffs would invest in Teilhard Technologies. Locher suggested that the prospects of attaining large financial success in a very short period of time were great.

As a result of Locher's representations, from September of 2004, though July of 2006, each plaintiff transferred to an account owned or controlled by Locher sums ranging between $5,748 and $295,000, totaling in an aggregate sum of approximately 1.338 million dollars. Locher repeatedly assured Plaintiffs that he was using their funds to purchase stock shares of Teilhard Technologies at $1.00 per share. However, Plaintiffs allege that instead of investing the funds in Teilhard Technologies, Locher either invested the funds into Shooting Star or diverted the money to other accounts.

On September 21, 2006, Defendant McIntire replaced Locher as manager of Shooting Star. In 2009, Locher, McIntire, and/or Shooting Star received a $.20 dividend for each share of Teilhard Technologies that Defendants purportedly purchased on behalf of Plaintiffs. Plaintiffs allege that Defendants failed to distribute this dividend, and despite Plaintiffs repeated demands for the dividend funds, Defendants refuse to release the funds.

As a result of these events, on March 25, 2010, Plaintiffs initiated this action in the First Judicial District Court for the State of Nevada. Plaintiffs allege claims for unjust enrichment, constructive trust, breach of contract, tortious and contractual breach of the implied covenant of good faith and fair dealing, conversion, civil theft, false and deceptive trade practices, securities violations, breach of fiduciary duties, common law fraud, and negligent misrepresentation.

On March 26, 2010, in response to an ex parte motion Plaintiffs filed, the First Judicial District Court entered an attachment order. The order provides,

> [A]ll funds currently held by Locher, Shooting Star and McIntire, regardless of the location, including but not limited to funds held in accounts at Wells Fargo Bank . . . an account at Imperial Capital Bank . . . and an account with VISA . . . shall be attached such that Locher, Shooting Star and McIntire shall cause to be delivered to the Registry of the First Judicial District Court of the State of Nevada in and for Carson City the total sum of $227,789.60.

The order further requires Locher, McIntire, and Shooting Star to deliver to the Registry of the First Judicial District Court 1,138,948 shares of Teilhard Technologies stock. Finally, the order states that Locher, McIntire, and Shooting Star are to deliver to the Registry any future distributions received by them during the pendency of the action from the 1,138,958 shares of Teilhard Technologies stock.

Plaintiffs served the attachment order on Locher and Shooting Star on March 31, 2010. To date, Defendants have not delivered to the Registry of the First Judicial District Court any of the items identified by the court. On April 30, 2010, pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, Defendants removed the action to this court.

**II.   Discussion**

Plaintiffs ask the court to issue an order to show cause requiring Defendants to appear and explain why the court should not hold them in contempt for failing to comply with the First Judicial District Court's Attachment Order. Plaintiffs further ask the court to appoint a receiver over the business affairs and operations of Shooting Star. Defendants counter that the state court improperly granted the attachment order and ask that this court vacate the order.

Generally, after removal from state court to a federal district court, an attachment order issued by the state court prior to removal remains in effect. *See* 28 U.S.C. § 1450 ("All injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court."); *Granny Goose Foods v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 436 (1974) ("[T]he statute ensures that interlocutory orders entered by the state court to protect various right of the parties will not lapse

upon removal. Thus attachments, sequestrations, bonds, undertakings, securities, injunctions, and other orders obtained in state court all remain effective after the case is removed to federal court.") Nonetheless, a federal district court has the authority to dissolve or modify orders entered in state court prior to removal. *Granny Goose*, 415 U.S. at 437; 28 U.S.C. § 1450.

Federal Rule of Civil Procedure 64 provides, "[E]very remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64(a). "Rule 64 codifies 'long-settled federal law providing that in all cases in federal court, whether or not removed from state court, state law is incorporated to determine the availability of prejudgment remedies for the seizure of person or property to secure satisfaction of the judgment ultimately entered.'" *United States v. Van Cauwenberghe*, 934 F.2d 1048, 1064 n.13 (9th Cir. 1991) (quoting *Granny Goose*, 415 U.S. at 436-37). Thus, under Rule 64, "state law controls the availability of provisional remedies to secure satisfaction of judgments in a federal district court." *Id.* (citations omitted). As such, here, the court looks to Nevada law to determine whether the First Judicial District Court validly issued the attachment order at issue.

In relevant part, Nevada Revised Statutes section 31.200 authorizes a defendant, at any time before trial, to apply for a discharge of a writ of attachment on the ground that the writ was improperly or improvidently issued. Nev. Rev. Stat. § 31.200(1)(a). Section 31.220 further states, "[If] the writ of attachment was improperly, improvidently or irregularly issued, it must be discharged . . . ." Nev. Rev. Stat. § 31.220.

The court has reviewed the parties arguments, Plaintiffs' application for the writ of attachment and evidence submitted in support thereof, and the state court's order. Based on its review of these documents, the court finds that irregularities in Plaintiffs' application and the subsequent attachment order prevent this court from enforcing the attachment. In particular, the court notes that the state court did not order the clerk to issue a writ of attachment, and, in fact, no

4

writ ever issued. Additionally, it appears that the bond the state court required is insufficient under Nevada Revised Statutes section 31.030(1)[2] and that notice of the execution of the writ of attachment was not served on Defendants in compliance with Nevada Revised Statutes sections 31.045 and 21.076.

Nonetheless, Plaintiffs ask that, in the event that the court finds that the attachment order was improper, the court issue a new writ of attachment. Under section 31.220, if the court determines that the writ of attachment was improperly, improvidently, or irregularly issued, the "release of the property shall not be ordered if, at or before the hearing on such application, the court orders a new writ to be issued as provided in NRS 31.024; and 31.026, in which case the sheriff shall relevy upon the property under the new writ." Nev. Rev. Stat. § 31.220.

Sections 31.024 and 31.026 govern the procedures for obtaining a writ of attachment when notice and a hearing are required. Under section 31.024, if the "plaintiff's affidavit, alone or as supplemented by additional evidence received by the court, meets the requirements of subsection 2 of NRS 31.020, the court shall issue an order directed to the debtor to show cause why the order for attachment should not issue." Nev. Rev. Stat. § 31.024. Section 31.020(2) provides, "All

---

[2] The attachment order requires Plaintiffs to post a $5,000 bond. Defendants contend that the bond is invalid on its face because it is less than $227,789.60, the amount that the attachment order directs Defendants to deposit with the court's registry. Nevada Revised Statutes section 31.030 requires that the bond be in a "sum not less than the amount claimed by the plaintiff or the value of the property to be attached, whichever is less . . . ." Nev. Rev. Stat. § 31.030(1). As such, under the statute, the bond that the state court approved was insufficient.

Despite Plaintiffs' arguments to the contrary, Defendants have not waived any objection to the bond amount. Section 31.030(3) states, "At any time after the issuing of the attachment, but not later than 5 days after actual notice of the levy thereof, the defendant may except to the sufficiency of the sureties. If the defendant fails to do so, the defendant is deemed to have waived all objections to them." Nev. Rev. Stat. § 31.030(3).

Section 31.030(3) requires a defendant to object to the sufficiency of the sureties, not the sufficiency of the bond. Under section 31.030(1), a plaintiff must provide a "written undertaking" on the part of the plaintiff . . . with two or more sureties . . . ." Nev. Rev. Stat. § 31.030(1). Black's Law Dictionary defines a surety as a "person who is primarily responsible for the payment of another's debt or the performance of another's obligation." Thus, while, under section 31.030(3), a defendant must object to the sufficiency of the surety, section 31.030(3) does not impose strict time limits on an objection to the amount of the bond itself.

5

applications to the court for an order directing the clerk to issue a writ of attachment with notice to the defendant shall be accompanied by an affidavit" that meets the requirements of subsection 1. Nev. Rev. Stat. § 31.020(2).

Here, the court has reviewed Plaintiffs' affidavits submitted in support of their motion for the writ of attachment and finds that the affidavits as they now stand do no meet the requirements of section 31.020(1). In particular, while the affidavits set forth the nature of Plaintiffs' claims for relief and identify the amount to which the affiant believes Plaintiffs are entitled, the affidavits do not, as subsection b requires, set forth the amount the affiant believes each plaintiff is entitled to recover from each defendant. In addition, the affidavits do not name all third parties, if any, upon whom a writ of garnishment in aid of the writ of attachment will be served. Accordingly, the court will grant Plaintiffs additional time to file affidavits that meet each of section 31.020(1)'s requirements. Plaintiffs may also submit additional evidence to support their attachment request.

Moreover, any writ of attachment will now be issued with notice and a hearing. Plaintiffs originally applied for a writ ex parte, and the requirements and procedures for obtaining a writ of attachment without notice and a hearing are distinct from the requirements and procedures for obtaining a writ of attachment after notice and a hearing. As such, the court will grant Plaintiffs leave to file a renewed motion for a writ of attachment explaining why the court should order the issuance of such a writ.

Upon receipt of any motion, affidavits, and other evidence Plaintiffs may submit, pursuant to section 31.024, the court will determine whether the affidavits and additional evidence, if any, meet the requirements of section 31.020. If the court concludes that these requirements have been met the court will issue an order in compliance with the requirements of section 31.024 directing Defendants to show cause why the court should not issue the order for attachment.

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Order to Show Cause and for

Appointment of Receiver (##18, 19) are DENIED.[3]

IT IS FURTHER ORDERED that Plaintiffs shall have fourteen (14) days from the entry of this order to file a renewed motion for writ of attachment to include supporting affidavits and, if necessary, additional evidence.

IT IS SO ORDERED.

DATED this 19th day of July, 2010.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

---

[3] Plaintiffs base their request for the appointment of a receiver largely on Defendants' failure to comply with the attachment order. Because the court has concluded that the attachment order was improperly issued, Defendants failure to comply with the order does not support the appointment of a receiver. Further, the court has reviewed the factors relevant to determining whether to appoint a receiver, *see Canada Life Assur. Co v. LaPeter*, 563 F.3d 837, 844 (9th Cir. 2009) (citations omitted), and finds that at this time Plaintiffs have not demonstrated that the "extraordinary equitable remedy" of appointing a receiver is warranted.